# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW,

*Plaintiffs-Appellees*,

*v.*

BECTON DICKINSON AND COMPANY,

*Defendant-Appellant*.

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-cv-0250, Chief Judge Leonard Davis.

## BRIEF FOR DEFENDANT-APPELLANT BECTON, DICKINSON AND COMPANY

WILLIAM F. LEE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

WILLIAM G. MCELWAIN
HEATH A. BROOKS
ROBERT A. ARCAMONA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000

*Attorneys for Becton, Dickinson and Company.*

October 29, 2013

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendant-Appellant Becton, Dickinson and Company certify as follows:

1.     The full name of every party represented by us is:
Becton, Dickinson and Company.

2.     The names of the real parties in interest represented by us are:
Becton, Dickinson and Company.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by us are:
None

4.     The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court, are:

      WILMER CUTLER PICKING HALE AND DORR, LLP: William F. Lee, William G. McElwain, Lisa J. Pirozzolo, Mark L. Rienzi, Juliana M. Mirabilio, Heath A. Brooks, Alexandra B. McTague, Stephanie K. Wood, Emily Bradford, Robert Arcamona.

      PAUL, WEISS, RIFKIND, WHARTON & HARRISON, LLP: Robert A. Atkins, Jacqueline P. Rubin.

      BECK REDDEN L.L.P.: David J. Beck, Alistair B. Dawson, Russell Post, Michael E. Richardson.

      MERCY CARTER TIDWELL, LLP: W. David Carter

Dated: October 29, 2013

*/s/ William F. Lee*
WILLIAM F. LEE

*Attorney for Becton, Dickinson and Company.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ....................................................................i

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF ISSUES .......................................................................2

STATEMENT OF CASE ...........................................................................2

STATEMENT OF FACTS .........................................................................3

I. THE DAMAGES JUDGMENT ......................................................3

II. THE PRIOR APPEAL .................................................................7

III. PROCEEDINGS AFTER REMAND ............................................8

SUMMARY OF ARGUMENT ...............................................................11

ARGUMENT ............................................................................................12

I. STANDARD OF REVIEW ..........................................................12

II. THE DISTRICT COURT ERRED IN RULING THAT IT WAS FORECLOSED BY THE MANDATE RULE FROM CONDUCTING FURTHER PROCEEDINGS TO DETERMINE APPROPRIATE DAMAGES CONSISTENT WITH THIS COURT'S MANDATE FROM THE PRIOR APPEAL ............................................13

 A. *The Mandate Required That The District Court Conduct New Damages Proceedings.* ........................................................13

 B. *Further Proceedings Are Not Foreclosed On The Basis That Damages Were "Within The Scope" Of The Mandate.* .....................18

 C. *The District Court Also Failed To Apply The Exception Expressly Acknowledged In* Tronzo *For "A Substantial Change In The Evidence."* ................................................................23

     *D.    BD Did Not Waive The Right To Obtain A Recalculation Of Damages By Not Noticing A Protective Appeal Of This Issue.* ..........27

CONCLUSION .....................................................................................................30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Accentra, Inc. v. Staples, Inc.*,
  500 F. App'x 922 (Fed. Cir. 2013) ....................................................14

*Becton, Dickinson & Co. v. Retractable Tech. Inc.*,
  133 S. Ct. 833 (2013) ........................................................................7

*Designing Health, Inc. v. Collett*,
  226 F. App'x 976 (Fed. Cir. 2007) ........................................10, 21, 22

*Engel Indus., Inc. v. Lockformer Co.*,
  166 F.3d 1379 (Fed. Cir. 1999) ..................................................passim

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
  137 F.3d 1475 (Fed. Cir. 1998) ..................................................passim

*Garber v. Chicago Mercantile Exch.*,
  570 F.3d 1361 (Fed. Cir. 2009) ........................................................12

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997) ..............................................12, 15, 17

*Love v. Tyson Foods, Inc.*,
  677 F.3d 258 (5th Cir. 2012) ...........................................................12

*Lowry Dev., LLC v. Groves & Assoc's Ins., Inc.*,
  690 F.3d 382 (5th Cir. 2012) ......................................9, 12, 28, 29

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) .......................................................14

*Retractable Tech., Inc. v. Becton, Dickinson & Co.*,
  653 F.3d 1296 (Fed. Cir. 2011) .....................................................1, 7

*Retractable Tech., Inc. v. Becton, Dickinson & Co.*,
  659 F.3d 1369 (Fed. Cir. 2011) (en banc) ......................................1, 7

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939) ........................................................................15

*TecSec, Inc. v. Int'l Bus. Mach. Corp.*,
    No. 2012-1415, 2013 WL 5452049 (Fed. Cir. Oct. 2, 2013) ...........................13

*Tronzo v. Biomet, Inc.*,
    236 F.3d 1342 (Fed. Cir. 2001) .................................................................passim

*Tronzo v. Biomet, Inc.*,
    318 F.3d 1378 (Fed. Cir. 2003) .........................................................................15

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ...................................................................3, 14

## FEDERAL STATUTES

28 U.S.C. § 1295(a)(1) ...............................................................................................1

28 U.S.C. §§ 1331 and 1338(a) ..................................................................................1

## FEDERAL RULES

Fed. R. Civ. P Rule 60(b)(5) ..................................................................................9, 12

## STATEMENT OF RELATED CASES

An appeal from this same civil action was previously before this Court in *Retractable Technologies, Inc. & Thomas J. Shaw v. Becton, Dickinson & Co.*, Fed Cir. Case No. 10-1402, upon which judgment was entered on July 8, 2011. *Retractable Tech., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011), *reh'g denied*, 659 F.3d 1369 (en banc). The panel of the prior appeal consisted of Chief Judge Rader, Judge Lourie, and Judge Plager.

In a second action between the same parties ("the antitrust case"), Retractable Technologies, Inc. and Thomas J. Shaw (collectively "RTI") assert antitrust and unfair competition claims. *Retractable Tech., Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.). In a jury trial in the antitrust case, RTI was allowed to introduce evidence concerning the action previously before the Court and the damages award at issue in this appeal.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a), and this Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). The district court entered a final order on August 7, 2013, denying Becton, Dickinson and Company's ("BD") motion to conduct further damages proceedings. (A1-3.) BD filed its timely notice of appeal on August 8, 2013. (A896.)

## STATEMENT OF ISSUES

Whether the district court erred in ruling that it was foreclosed by the mandate rule from conducting further proceedings to recalculate damages following this Court's partial reversal holding that one of the devices subject to the damages award did not infringe any patent.

## STATEMENT OF CASE

A jury in the Eastern District of Texas found that two BD retractable syringes, the 1 mL and 3 mL Integra syringes, infringed several claims of three patents asserted by RTI.  For damages, the jury awarded RTI $5 million as a reasonable royalty for both products.

On appeal, BD challenged the liability verdicts as to all claims, all patents, and both products.  BD did not press a specific argument challenging the amount of the jury's damages verdict because it had no basis for doing so separate from its challenge to liability.  Indeed, a $5 million damages award was within the range that BD's own expert testified was reasonable if the jury found ***both*** of BD's products to infringe.

On appeal, this Court affirmed the liability finding as to the 1 mL syringe, but reversed the finding of infringement as to the 3 mL syringe (the higher-selling product by a large margin).  After this Court issued its mandate reversing liability on the 3 mL syringe, BD requested that the district court conduct further

proceedings to determine the proper damages amount for infringement by the 1 mL syringe alone, given that the prior $5 million damages award covered both the non-infringing 3 mL syringe and the 1 mL syringe. However, the district court refused to conduct further proceedings, believing that it lacked the authority to revisit damages under the "mandate rule." (A2.)

The district court misapplied the mandate rule. Under the "normal rule" applicable to cases in which there has been a partial reversal, the district court was required to conduct further proceedings to determine the effect of the Court's mandate on the damages award. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (after reversing a finding of infringement for one of three patents in suit, stating, "where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages"). The district court's refusal to conduct such proceedings, far from being compelled by the Court's mandate, violated the mandate by failing to give effect to the Court's holding that the 3 mL syringe did not infringe.

## STATEMENT OF FACTS

### I. THE DAMAGES JUDGMENT

At the trial of the underlying infringement action, RTI asserted that BD's 3 mL Integra syringe and 1 mL Integra syringe infringed several claims of three

patents. The 3 mL Integra was first sold in 2002, followed by the 1 mL Integra in 2004. (A348.) By the time of trial, sales of the 3 mL Integra were more than four times larger than sales of the 1 mL Integra.[1] (A478.) Moreover, BD had stopped selling the 1 mL Integra prior to trial.

Both sides submitted expert testimony on the issue of damages. RTI's expert advanced a lump sum reasonable royalty theory in the amount of $72 million. (A342.) He opined that a hypothetical negotiation between the parties would have occurred in May 2000, when RTI contended that testing of the 3 mL Integra occurred. RTI's expert then testified that the parties would have negotiated a lump sum royalty of 20% applied to the projected profits set out in a BD marketing plan directed to the 3 mL Integra device and other sized devices that had not yet been developed at the time of the plan's creation.

BD's expert submitted expert testimony with respect to both lost profits and a reasonable royalty. Specifically, BD's expert testified to a total lost profits amount of $4.9 million,[2] of which $3.4 million was attributable to the 3 mL syringe, thus leaving $ 1.5 million attributable to the 1 mL syringe. (A478.) As to a reasonable royalty, BD's expert testified that the hypothetical negotiation would

---

[1]     The 1 mL and 3 mL Integra combined for $57 million in U.S. sales, with the 3 mL syringe accounting for $47 million of that total.

[2]     BD's expert added approximately $400,000 in reasonable royalty damages to his $4.9 million lost profits number to account for foreign sales. (A478.)

have resulted in a running royalty applied to actual sales of the two products.
Based on the analysis of a non-testifying expert, BD's expert opined that the
reasonable royalty rate would be 4.5%, which (applied to actual sales of both
products) yielded a total royalty of approximately $3 million. (A478.)

With respect to damages, only the amount of a reasonable royalty was
submitted to the jury. The verdict form included an interrogatory specifically
directed toward damages:

> **Interrogatory No. 6.**
> If you have found that any of BD's accused devices infringe
> any of the asserted claims of any of the '733 Patent, the '077
> Patent, or the '224 Patent, then even if you have answered
> "yes" to any portion of Interrogatory Nos. 3 through 5
> [regarding invalidity of the patents], please determine the
> amount of reasonable royalty damages that would fairly and
> adequately compensate RTI for infringement.

(A143.) Thus, the jury was asked for a single damages amount covering the
products it found to infringe.

The jury found that both the 1 mL and 3 mL syringes infringed. The jury
responded to Interrogatory No. 6 by awarding RTI $5 million. (A143.)

Following the verdict, BD moved for judgment as a matter of law ("JMOL")
and/or a new trial, arguing that RTI's patents were invalid and that BD's products
did not infringe. BD did not separately challenge the damages award in its JMOL
motion given that the $5 million award was within the range of damages advocated

by BD's own expert witness and would need to be revised if BD prevailed on any of its non-infringement or invalidity arguments.

On May 19, 2010, the district court denied BD's JMOL motion and entered Final Judgment. In the Judgment, the district court collectively identified all patent claims for which the jury had found infringement as "the Infringed Claims," and both BD's 1 mL and 3 mL syringes as "the Infringing Products." (A109.) For damages, the district court ordered:

> that Plaintiffs shall have and recover from Defendant the total sum of $5,000,000.00, together with prejudgment interest at the prime rate, compounded annually, calculated up to entry of Final Judgment, and based on running royalties for infringement from March 2002 up through trial, together with post-judgment interest on the entire sum calculated pursuant to 28 U.S.C. § 1961.

(A110 (underlining in the original).)

Unquestionably, the damages award covered both the 1 mL and 3 mL syringes. Among other things, the Judgment was for a "running royalty" from when the 3 mL Integra was first sold in March 2002, a full two years before the 1 mL Integra was launched. (A348.) The district court also awarded interest calculated on a "running royalty" from the launch of the 3 mL Integra. Finally, the district court entered an injunction on both the 1 mL and 3 mL products, which it

stayed as to the 3 mL Integra for the longer of twelve months or the exhaustion of appeal.[3]  (A111.)

## II.    THE PRIOR APPEAL

During the briefing on appeal, neither party substantively discussed the injunction or damages award.  As on JMOL, BD did not separately challenge the damages award because it did not believe there was any independent error associated with the award, other than the fact that it depended on the liability verdict that BD was appealing.

This Court reversed the liability finding as to the 3 mL syringe and affirmed the liability finding as to the 1 mL syringe.  *Retractable Tech., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1311 (Fed. Cir. 2011).  The Court's opinion did not discuss the district court's damages award or injunction.  RTI subsequently sought rehearing and rehearing en banc, which the Court denied, *see Retractable Tech., Inc. v. Becton, Dickinson & Co.*, 659 F.3d 1369 (Fed. Cir. 2011) (en banc), and certiorari, which was also denied, *see Becton, Dickinson & Co. v. Retractable Tech. Inc.*, 133 S. Ct. 833 (2013).  On November 7, 2011, the Court issued its mandate, which included both its judgment and underlying opinion, neither of which mentioned the damages award.  (A72-107.)

---

[3]     By the time of trial, BD had stopped selling the 1 mL Integra.

III.    **PROCEEDINGS AFTER REMAND**

From the issuance of the mandate until March 2013,[4] the parties did not

question that additional damages proceedings in the district court were appropriate

under the mandate and needed in light of this Court's conclusion that the 3 mL

syringe did not infringe.  In fact, in a paper in the antitrust case, RTI told the

district court that "the sole issue [for remand] would be the proper allocation of

damages to be accorded infringement by the 1 mL Integra syringe *in light of the*

*fact that the jury's award of $5 million for a reasonable royalty was based on its*

*finding that both products infringed*."  (A532  (Case No. 2:08-cv-16, Dkt. 269 at

2) (emphasis added).)  During this period, the parties had numerous discussions

about the possibility of a stipulated order that would reduce the damages award to

reflect this Court's reversal of the 3 mL liability verdict.  (*See* A749, A755, A843.)

But on March 5, 2013—in an about-face—RTI argued for the first time that

the district court could not conduct further proceedings to recalculate damages for

infringement by the 1 mL syringe alone.  (A729-733.)  In light of this abrupt

change in position, BD filed a motion to conform the district court's Final

---

[4]    The action was delayed following remand as a result of the retirement of the
district court trial judge while the case was on appeal.

Judgment to the mandate.[5] Specifically, BD requested that the district court modify the Judgment by lifting the injunction over the 3 mL syringe and conducting further proceedings to recalculate damages for infringement by the 1 mL Integra alone—both consistent with this Court's mandate.

On May 13, 2013, the Magistrate Judge issued a Recommendation that the district court deny BD's motion and refuse to conduct further proceedings on damages. (A4-9.) BD objected to the magistrate's Recommendation. On August 7, 2013, the district court denied BD's objection and adopted the magistrate's Recommendation. (A1-3.) In adopting the Recommendation, the district court held that the "mandate rule" foreclosed it from conducting further proceedings to

---

[5]     One basis for BD's underlying motion was Rule 60(b)(5), which permits relief from a judgment if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Independent of Rule 60(b)(5) and BD's motion, the parties set forth their positions regarding the effect of this Court's decision and the scope of the mandate in several filings in response to an order of the Magistrate Judge seeking their views on further proceedings. (A71.) The Magistrate Judge questioned whether he even had jurisdiction to act on the case. As BD advised the Magistrate Judge, a motion from BD was not necessary to conduct further proceedings because, following this Court's mandate, the Judgment was contrary to the mandate and unenforceable in its present form. (A756.) In addition, under Fifth Circuit law, Rule 60(b)(5) also afforded a procedural mechanism for modification of the Judgment and further proceedings and eliminated any question about the court's jurisdiction to proceed. *Lowry Dev., LLC v. Groves & Assoc's Ins., Inc.*, 690 F.3d 382, 385-87 (5th Cir. 2012).

recalculate damages.  (A2, A6-8.)  Inconsistently, the district court agreed to lift the injunction over the 3 mL Integra.  (A2.)

To support its refusal to conduct further damages proceedings, the district court's final order (incorporating the Recommendation) relied on this Court's opinions in *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001), *Designing Health, Inc. v. Collett*, 226 F. App'x 976 (Fed. Cir. 2007) (non-precedential), and *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379 (Fed. Cir. 1999). According to the district court, because the issue of the $5 million damages award was supposedly "within the scope of the initial judgment," these precedents prohibited the district court from conducting further proceedings.  (A1-2, A6-8.) The district court further relied on the fact that this Court did not expressly "remand" the case as evidence that the district court lacked authority to determine the proper damages amount for infringement by the 1 mL syringe alone.  (A1-2, A6-7.)  Finally, the district court refused to apply an exception to the "mandate rule" on the ground of a "substantial change in the evidence," *Tronzo*, 236 F.3d at 1349, finding that this Court's determination that the 3 mL syringe did not infringe could not constitute a "change in the evidence."  (A1-2.)

On August 8, 2013, BD filed a timely notice of appeal.  (A896.)

## SUMMARY OF ARGUMENT

In cases where a damages award covers more than one patent or product, and there is a partial reversal of liability by this Court, the Court's mandate requires that the district court conduct further proceedings to determine the effect of the reversal on any damages award. The presence or absence of the word "remand" in the mandate does not affect the applicability of this rule. *See infra* at 13-18.

The "mandate rule" precluding further proceedings that are "within the scope of the judgment" did not foreclose the relief BD sought. Indeed, BD's proposed relief was not only consistent with the mandate, it was ***required*** by the mandate in order to ensure that this Court's ruling that the 3 mL Integra did not infringe is properly observed. *See infra* at 18-23.

Moreover, even where the "mandate rule" would otherwise bar further proceedings on a particular issue, this Court's precedent recognizes an exception to the rule "in circumstances where there has been a substantial change in the evidence." *Tronzo*, 236 F.3d at 1349. Here, this Court's determination that the 3 mL syringe did not infringe is a "substantial change in the evidence" underlying the damages award, which is based in large part on that non-infringing product. Contrary to the district court's ruling, this Court has recognized its own intervening

opinion as such a "substantial change." The district court thus erred in failing to apply this exception. *See infra* at 23-27.

Lastly, there is no basis for finding that BD waived any argument. Prior to this Court's partial reversal, BD had no basis for arguing that the damages award was incorrect separate from its argument on liability. There is no requirement that a party lodge a "protective appeal" anticipating the consequence of a partial reversal. *See infra* at 27-29.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court's interpretation of its own mandate is a question of law, reviewed de novo. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950-51 (Fed. Cir. 1997). The Court reviews issues not unique to patent law, such as a determination under Rule 60(b)(5), according to the law of the regional circuit—here the Fifth Circuit. *See Garber v. Chicago Mercantile Exch.*, 570 F.3d 1361, 1363-64 (Fed. Cir. 2009) ("In reviewing a purely procedural question, such as a Rule 60(b) motion or a Rule 41(a) dismissal, we apply the law of the regional circuit."). The Fifth Circuit reviews a district court's decision applying Rule 60(b) for abuse of discretion. *Lowry Dev.*, 690 F.3d at 385. A legal error is an abuse of discretion. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). Because the district court's order denying BD's Rule 60(b) motion depends on a question of law (the proper

reading of this Court's mandate), the proper standard of review is de novo. *See*

*Engel*, 166 F.3d at 1381-82 (applying de novo review where a Rule 60(b) motion

was denied as the result of a district court interpreting this Court's mandate).

## II. THE DISTRICT COURT ERRED IN RULING THAT IT WAS FORECLOSED BY THE MANDATE RULE FROM CONDUCTING FURTHER PROCEEDINGS TO DETERMINE APPROPRIATE DAMAGES CONSISTENT WITH THIS COURT'S MANDATE FROM THE PRIOR APPEAL

### A. The Mandate Required That The District Court Conduct New Damages Proceedings.

This Court explained the "mandate rule" in a recent opinion[6]:

> After our mandate issues, the mandate rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008). For an issue to be implicitly decided, it must be "decided by necessary implication." *Laitram*, 115 F.3d at 951. Moreover, in interpreting this court's mandate, "both the letter and the spirit of the mandate must be considered." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).

*TecSec, Inc. v. Int'l Bus. Mach. Corp.*, No. 2012-1415, 2013 WL 5452049, at *4

(Fed. Cir. Oct. 2, 2013).

Here, there is no question that this Court's decision in the prior appeal did

not decide what amount of damages were attributable to infringement by the 1 mL

Integra syringe alone, either explicitly or "by necessary implication." Prior to this

Court partially reversing the liability judgment, there was no such damages issue to

---

[6] The mandate of an appellate court "consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs." Fed. R. App. P. 41(a).

decide.  The jury's verdict awarded damages for infringement by both products.

BD did not contend that the Judgment based on that verdict reflected any error in

the amount of damages awarded if the findings of infringement by ***both*** products

were correct.

   This is hardly an unusual procedural posture in patent cases, which

frequently involve multiple patents and multiple accused products.  In such cases,

where there has been a partial reversal, the mandate ***requires*** the district court to

conduct further proceedings to determine the effect of the reversal on any damages

award.  *See Verizon*, 503 F.3d at 1310 (after reversing a finding of infringement for

one of three patents in suit, stating, "where the jury rendered a single verdict on

damages, without breaking down the damages attributable to each patent, the

normal rule would require a new trial as to damages"); *NTP, Inc. v. Research in

Motion, Ltd.*, 418 F.3d 1282, 1326 (Fed. Cir. 2005) ("because the jury verdict did

not specify the amount of infringing sales attributed to each individual patent

claim, or the specific devices and services determined by the jury to infringe each

separately asserted claim, the district court will have to determine the effect of any

alteration of the jury verdict on the district court's damages award and on the scope

of the district court's injunction"); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x

922, 931 (Fed. Cir. 2013) (non-precedential) (the "proper course" when a judgment

based on a finding that multiple patents are valid and infringed is vacated is for the

district court to "revisit the damages issue based on its reevaluation of the liability issues").

The district court believed it could disregard this precedent because "in each of these cases the Court expressly vacated the damages award and remanded the case." (A1.) To be sure, this Court in the prior appeal did not explicitly state that a "remand" was required to reassess damages, but the absence of such express direction is irrelevant. A district court has the authority to conduct additional proceedings regardless of whether the Court's mandate expressly orders a "remand." *See Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1380 (Fed. Cir. 2003) (rejecting argument that the "absence of the word 'remanded'" foreclosed further district court action); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998) (rejecting argument that "omission of the words 'and remanded'" barred a new trial in the district court). Specifically, whether or not the appellate court orders a "remand," "a district court is free to take any action that is ***consistent with the appellate mandate***, as informed by both the formal judgment issued by the court and the court's written opinion." *Id.* at 1484 (emphasis added).[7]

---

[7]     *See also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."); *Laitram*, 115 F.3d at 951 ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on 'matters left open by the mandate.'" (internal citation omitted)).

In this case, additional damages proceedings were not only "consistent with" the appellate mandate, they were required. According to the mandate in this case, "the infringement" is that of the 1 mL syringe alone. However, the Judgment's $5 million award was based on infringement by **both** the 1 mL and 3 mL syringes, and the Judgment awarded damages and interest based on a running royalty starting in 2002, when only the 3 mL Integra was sold. (A110.) Accordingly, the mandate required the district court to engage in further damages proceedings to give effect to this Court's holding of non-infringement by the 3 mL Integra.

The district court should have been guided by this Court's opinion in *Exxon v. Lubrizol*. There, the jury found literal infringement by Lubrizol without addressing infringement under the doctrine of equivalents. *Exxon*, 137 F.3d at 1484. On appeal, the panel adopted a different claim construction and reversed the finding of literal infringement, noting that it expressed no view on the doctrine of equivalents. *Id.* Exxon subsequently asked the district court for a new trial on the doctrine of equivalents, but the district judge denied the request, stating that the mandate "left him with 'no authority to grant a new trial.'" *Id.* at 1477.

The Court reversed, holding that "[u]nder the general rule that an appellate mandate governs only that which was actually decided, the district court was … free to consider Exxon's motion for a new trial [on the doctrine of equivalents]." *Id.* at 1478. The Court expressly noted that its decision did not turn on the fact that

its prior opinion expressly disclaimed any decision on the issue of equivalents. *Id.* The Court's decision instead rested on a fundamental practical point: the Court's prior mandate could not be said to cover infringement under the doctrine of equivalents because "[t]he question whether there could be doctrine-of-equivalents infringement under the claim construction adopted by this court became a critical issue in the case only after this court's decision on appeal." *Id.* at 1479.

The same circumstances apply here. The issue of damages for infringement by the 1 mL Integra alone was not a relevant, much less critical, issue until this Court partially reversed the district court's Judgment. As a result, this Court did not explicitly or implicitly decide the issue of damages for only the 1 mL syringe in the prior appeal because the issue was never considered by the jury or the district court. *See also Laitram*, 115 F.3d at 952-53 (district court empowered to decide issues that only became relevant upon reversal by the court of appeals).

The district court's decision not to conduct further damages proceedings results in a strange anomaly. Obviously, BD's interest in showing non-infringement in the first appeal was not an abstract one. BD appealed the judgment of liability in order to obtain relief from the injunction and damages award. Upon the partial reversal, the district court modified the Judgment to lift the injunction over the 3 mL syringe, but inconsistently awarded no relief at all with respect to damages. Far from following the mandate, the district court's decision represents a

nullification of this Court's mandate by treating damages as if the Judgment had been affirmed in its entirety.

   B.    *Further Proceedings Are Not Foreclosed On The Basis That Damages Were "Within The Scope" Of The Mandate.*

   In addition to erroneously giving weight to the absence of the word "remand" in this Court's mandate, the district court relied on a trio of cases for the proposition that "'[a]n issue within the scope of the initial judgment of a district court is necessarily incorporated within the scope of a court of appeals' mandate, and remanding the case to the district court without instructions to revisit the issue *forecloses further review on remand*.'"  (A2 (emphasis in original) (citing *Designing Health, Inc. v. Collett*, 226 Fed. App'x 976, 980 (Fed. Cir. 2007), and citing *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001)), A7 (discussing *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379 (Fed. Cir. 1999))).)  According to the district court, adopting the magistrate's opinion, "[t]here can be no doubt that the $5 million damages award in the instant case was 'within the scope of the initial judgment' since it was expressly set out therein."  (A6.)  The district court therefore concluded that damages could not be revisited without explicit instructions from this Court.  (A1-2, A6-7.)

   The district court's reasoning was mistaken and unsupported by the precedent on which it relied.  This is not a case in which BD seeks to make a new argument against the Judgment that was the subject of the first appeal.  BD made

- 18 -

its challenge to the Judgment in the prior appeal, and it was partially successful. BD now seeks only the fruits of that partial victory in the form of an order for further proceedings to redetermine damages.

BD noted the illogical results of RTI's reasoning to the district court. Under the "mandate rule" as articulated by RTI, if an injunction had not been entered, this Court's partial reversal would have had no practical effect at all. RTI would have been free to enforce a Judgment for running royalties on the sale of products that this Court found did not infringe. Indeed, under RTI's view of the mandate, even a complete reversal would afford no relief from the damages award because the district court would have been powerless to modify the Judgment.

The district court dismissed this argument on the grounds that it "ignore[d] the reality that a complete reversal would leave no judgment to collect." (A2.) The district court's comment, however, itself ignores the clear language of the Judgment. According to the Judgment, damages, including interest, were awarded "based on running royalties for infringement from March 2002 up through trial," an award that clearly depends on the 3 mL Integra for at least the reason that the 1 mL Integra was not sold until 2004. This Court's mandate partially reversing the Judgment with respect to the 3 mL Integra therefore left the Judgment unenforceable on its own terms.

The district court also dismissed the incongruity between its decision to modify the injunction but not revisit damages based on the court's "broad equitable authority to modify injunctions."  (A2 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358, 1360 (Fed. Cir. 2008)).)  But the only change in circumstance warranting modification of the injunction was this Court's mandate.  If the Court's partial reversal—which said not a word about the injunction—required modification of the injunction portion of the Judgment, it just as clearly required modification of the other remedial portion of the same Judgment based on infringement by the 3 mL Integra device.

Thus, cases that parse the question of whether issues were or were not "within the scope" of the judgment and the mandate are fundamentally inapposite. Rather than addressing the issue of what happens to a damages award when the liability judgment underlying the award is reversed, the cases relied on by the district court concern parties seeking another chance at an argument that they lost or waived in a prior appeal.  That is not the situation in this appeal.

For example, in *Tronzo*, the jury awarded damages on each of various state law claims, including $7,134,000 in compensatory damages and $20 million in punitive damages on a fraud claim.  236 F.3d at 1344-45.  On appeal, the defendant, Biomet, challenged the evidentiary basis for the $7,134,000 compensatory damages award.  *Id*. at 1345.  However, despite having challenged

- 20 -

the basis for the punitive damages award in a JMOL motion, Biomet did not appeal the issue of punitive damages. *Id*. at 1349.

This Court remanded for the district court to recalculate compensatory damages applying the correct standard. *Id.* at 1345. On remand, the district court awarded only $520 in compensatory damages and went on to reduce the punitive damages award. In a second appeal, the Court ruled that its mandate in the prior appeal precluded a recalculation of punitive damages. The *Tronzo* panel distinguished its case from *Exxon* and *Laitram* because in those cases the district court had not considered the "contested issue and, therefore, the issue was not deemed within the scope of the judgment initially appealed." *Id.* at 1348. In contrast, the district court in *Tronzo* "**did** consider the contested issue because it granted an award of punitive damages based on the jury verdict," *id.* (emphasis in original), despite a challenge "at that time … that the amount of punitive damages was excessive and not supported by the weight of the evidence," *id.* at 1348-49. The argument that punitive damages should be lowered made on remand was simply a continuation—differing only in degree—of this earlier rejected yet unappealed argument.

The Court's unpublished opinion in *Designing Health*, on which the district court relied, makes a similar point. In *Designing Health*, the district court entered judgment against the defendants for claims of fraud and breach of fiduciary duty.

- 21 -

*Designing Health*, 226 F. App'x at 977. On appeal, this Court affirmed the denial of JMOL on liability, but reversed the denial of JMOL on damages, holding that the evidence was insufficient to support the damages award. *Id.* Upon the return of the case to the district court, the plaintiff moved for a new damages trial arguing that the district court had improperly excluded evidence that could have supported the damages award. The district court denied the plaintiff's new trial motion based on the mandate rule. This Court affirmed, distinguishing *Exxon* on the basis that "our prior opinion **considered** and disposed of all issues [Designing Health] now asserts as grounds for a new trial." *Id.* at 981 (emphasis added).

*Engel*, which the Magistrate Judge cited in his Recommendation, is to the same effect. There, Lockformer licensed a patent to Engel. 166 F.3d at 1381. Engel subsequently filed a declaratory judgment action against Lockformer asserting non-infringement and that the license was invalid. *Id.* After several appeals, this Court found that Engel's products did not infringe Lockformer's patent, but that the license was valid. *Id.* Engel then moved the district court for reimbursement of royalty payments made to Lockformer after the filing of the declaratory judgment action. *Id.* On appeal, the Court ruled that the reimbursement issue had been subsumed within its prior mandate and the district court was therefore foreclosed from conducting further proceedings on the issue. In response to Engel's argument that the refund issue was not ripe at the time of

the prior appeal because the district court had found infringement (a ruling the Court only later overturned), the Court noted that its prior opinion had also decided the validity of the license agreement, which would have been "an impermissible advisory opinion" if, as Engel argued, the right to payments under that agreement was not at issue. *Id.* at 1383-84.

In sum, *Tronzo*, *Designing Health*, and *Engel* stand only for the proposition that issues actually decided or decided by necessary implication by the district court (*Tronzo*) and/or a court of appeals (*Designing Health* and *Engel*) are "within the scope of the judgment" and therefore the mandate. Here, the issue of what damages are appropriate for infringement by the 1 mL Integra alone was not and could not have been considered by the district court or this Court in the prior proceeding. What this Court did consider and decide was whether the liability judgment that underlies the damages award was incorrect. Thus, BD did not just seek proceedings **permitted** by the mandate. Rather, BD asked the district court to **adhere** to the mandate and conduct further proceedings, which were necessary in order to give effect to the Court's finding that the 3 mL Integra did not infringe.

> C.     *The District Court Also Failed To Apply The Exception Expressly Acknowledged In* Tronzo *For "A Substantial Change In The Evidence."*

Even if cases such as *Tronzo* were applicable to this appeal, the district court plainly erred in refusing to consider the express exception to the mandate rule that

*Tronzo* describes.  In *Tronzo*, this Court was careful to note that the mandate rule is

not "an unassailable limit on an appellate court's jurisdiction."  236 F.3d at 1349.

Rather, the "mandate rule" is "better viewed as [a] prudential doctrine[ ] that

direct[s] a court's discretion, but do[es] not necessarily limit a court's power."  *Id*.

Thus, even in cases where the contested issue is within the scope of the appellate

mandate, that issue may be revisited "in circumstances where there has been a

substantial change in the evidence."  *Id.*

   *Tronzo* found no such "substantial change in the evidence" based on the

post-appeal reduction in compensatory damages because the amount of

compensatory damages was of minimal relevance to the issue of punitive damages.

The "most important guidepost"—i.e., "the reprehensibility of the conduct"—had

been ripe for appeal and yet went unchallenged when the defendant did not appeal

the jury's finding of wanton and willful conduct.  *Id.* at 1350.  In addition, the

proportionality of a punitive damages award turns on other factors beyond the

amount of actual damages, and none of those factors had changed.  *Id.* at 1349-50.

Given the defendant's waiver as to the fundamental underlying basis for the

punitive damages award, coupled with the fact that none of the other factors that

affect the amount of punitive damages had changed, the change in the collateral

issue of compensatory damages did not constitute a "substantial change in the

facts" that would allow the district court to revisit a punitive damages award that

(according to this Court) was within the scope of the appellate mandate. *Id.* at 1350.

Here, by contrast, the critical factor that affects the amount of damages—the amount and identity of infringing sales—was changed by this Court's decision. As a result, there is no way to reconcile the $5 million damages judgment—based on a "running royalty … from March 2, 2002," when the 3 mL was introduced—with this Court's determination that the 3 mL Integra does not infringe.

BD therefore argued that the Court's reversal of the 3 mL infringement determination constituted a "substantial change in the evidence" as to the issue of damages, but the district court dismissed this argument in a single sentence, stating that "the panel gave no indication in *Tronzo* that its own decision could ever be considered a 'change in the evidence.'" (A1-2.) The district court was mistaken. *Tronzo* did not state or suggest that this Court's own decision could never constitute the requisite "substantial change." To the contrary, *Tronzo* engaged in an in-depth analysis of whether, in the particular case at hand, its decision constituted a "substantial change." *See Tronzo*, 236 F.3d at 1350. The district court should have performed a similar analysis in this case.

If the district court had conducted the analysis mandated by *Tronzo*, it could only have concluded that reversal of the 3 mL infringement verdict constituted a "substantial change in the evidence" as to the $5 million damages verdict. In

contrast to *Tronzo*, the amount of damages awarded by the jury in this case was directly tied to the issue of what products infringe—evidence that was drastically altered when this Court held that the much higher-selling 3 mL syringe did not infringe. Unlike in *Tronzo*, where punitive damages were based on many factors and the amount of compensatory damages was of limited significance in the analysis, there is no basis on which the $5 million damages award can be defended based solely on infringement by the 1 mL Integra. On the contrary, because the Judgment is for a running royalty starting in 2002 (prior to the 1 mL syringe being sold) and because the sales of the 3 mL Integra vastly exceeded the sales of the 1 mL Integra, it is plain that the lion's share of the damages award is attributable to the non-infringing 3 mL Integra.

Furthermore, the district court found that the reversal of the infringement judgment regarding the 3 mL Integra constituted a "change in circumstances" warranting post-appeal modification of the injunction. (A2.) There is no logical basis to find that the change in evidence was significant enough to require modification of the injunction order, but not the $5 million damages order, when both orders were based in part on a now-reversed liability judgment.

Finally, regardless of whether the Court's opinion is properly characterized as a "substantial change in the evidence," the critical point about the exception described in *Tronzo* is that it is based on a recognition that the "mandate rule" is

merely a prudential doctrine. *Tronzo*, 236 F.3d at 1349. As such, the mandate rule's application should further some policy or principle of fairness. Neither RTI nor the district judge ever articulated how the result in this case—enforcing a damages amount based in large part on a non-infringing product—serves any such purpose.

     D.    *BD Did Not Waive The Right To Obtain A Recalculation Of Damages By Not Noticing A Protective Appeal Of This Issue.*

The opinion of the Magistrate Judge, which was adopted by the district court, implies that BD waived its arguments by suggesting that the question of damages for the 1 mL syringe "are matters that should have been presented to the Federal Circuit on appeal and not raised for the first time in this court." (A8.) To the extent the district court's holding was based on waiver principles, it was mistaken.

This Court has typically treated "waiver" issues in the context of the appellate mandate by applying the "mandate rule" rather than a separate waiver analysis. *See, e.g.*, *Tronzo*, 236 F.3d at 1348, 1348 n.1; *Engel*, 166 F.3d at 1383. As such, BD has not waived its damages arguments for the reasons stated above in discussing the "mandate rule."

More fundamentally, an essential requirement for finding a waiver would be that BD had, but did not pursue on appeal, an argument that the district court erred with respect to damages. No such argument existed before this Court reversed the

finding of infringement with respect to the 3 mL Integra because BD did not believe the $5 million damages award was improper if both products infringed. The question of what damages are appropriate for infringement by only the 1 mL syringe—the ultimate question that has led to this appeal—only arose after this Court's mandate finding that the 3 mL Integra did not infringe.

Given that there were no substantive 1 mL Integra-specific arguments ripe at the time of the original appeal, any contention that BD should have somehow previously addressed the issue now before the Court amounts to arguing for a "protective appeal." Indeed, in the district court, RTI suggested that BD was required to pay the $5 million damages Judgment based on two products simply because it did not explicitly tell the Court in the prior appeal that, in the event of a partial reversal, there needed to be an explicit remand to recalculate damages so that it would not be paying damages for non-infringing acts. (A777-778.)

Federal courts, however, do not require such "protective" or "pro forma" appeals. For example, in in the context of a Rule 60 motion, the Fifth Circuit explained that although an appellant might be free to bring a series of "protective" appeals to cover all possible claims that it might seek to resurrect, depending on how issues on appeal are ultimately decided, there is "no case . . . that stands for the principle that Rule 60(b) relief is unavailable when the movant has not gone through the hollow exercise of filing such an anticipatory, *pro forma* appeal."

*Lowry Dev.*, 690 F.3d at 388 (italics in original). Even if it is foreseeable that the issue might ripen upon issuance of the appellate decision, the appellant need not protectively appeal the issue in the first instance. *Id.* Instead, BD was entitled to prosecute its appeal of the liability judgment, confident that the district court would then conduct proceedings "consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion," *Exxon*, 137 F.3d at 1484, which in this case meant proceedings to recalculate damages.

Moreover, there is ample reason not to require "protective" appeals in patent cases such as this. The district court's Judgment and BD's subsequent appeal involved two products having different characteristics, three patents having different issue dates, and eight claims of different scope. (*See* A671-685, A686-707, A708-728.) The appeal could have resulted in numerous potential dispositions relevant to damages and injunctive relief. Requiring BD to argue for the proper apportionment of damages depending on the ultimate determination of the appeal would be a useless technicality. Neither the jury nor the district court had decided the issue of the amount of damages attributable to particular patents or products. Absent such a decision, there was nothing for this Court to review. This is the very reason why it is the "normal rule" in such cases that the district court revisit the issue of damages after receiving this Court's mandate.

## CONCLUSION

For the foregoing reasons, BD respectfully requests that this court reverse the district court's order denying BD's Rule 60(b)(5) Motion to Conform Judgment to Federal Circuit Mandate with respect to damages and expressly remand the case to the district court with instructions to conduct further damages proceedings.

Dated: October 29, 2013                    Respectfully submitted,


                                           /s/ William F. Lee
WILLIAM G. MCELWAIN                         WILLIAM F. LEE
HEATH A. BROOKS                             WILMER CUTLER PICKERING
ROBERT A. ARCAMONA                            HALE AND DORR LLP
WILMER CUTLER PICKERING                     60 State Street
   HALE AND DORR LLP                        Boston, MA  02109
1875 PENNSYLVANIA AVE., NW                  (617) 526-6000
WASHINGTON, DC  20006
(202) 663-6000

                                           *Attorneys for Defendant-Appellant*
                                           *Becton, Dickinson and Company.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Brief for Defendant-Appellant Becton, Dickinson and Company with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system this 29th day of October, 2013, and served a copy on counsel of record by the CM/ECF system and by electronic mail to the following individuals:

Roy W. Hardin
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
rhardin@lockelord.com

Dated: October 29, 2013

*/s/ William F. Lee*
WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorney for Defendant-Appellant*
*Becton, Dickinson and Company.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies

that this brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R.

App. P. 32(a)(7)(B), the brief contains 7,177 words.

2.      The brief has been prepared in proportionally spaced typeface using

Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed.

R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of

this word processing system in preparing this certificate.


Dated:  October 29, 2013              */s/ William F. Lee*
                                      WILLIAM F. LEE
                                      WILMER CUTLER PICKERING
                                        HALE AND DORR LLP
                                      60 State Street
                                      Boston, MA  02109
                                      (617) 526-6000

                                      *Attorney for Defendant-Appellant*
                                      *Becton, Dickinson and Company.*

# ADDENDUM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE | § | |
| TECHNOLOGIES, INC., et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 2:07-cv-250-LED-RSP |
| | § | |
| BECTON, DICKINSON AND CO., | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court is Defendant Becton, Dickinson and Company's Rule 60(b)(5) Motion to Conform Judgment to Federal Circuit Mandate (Dkt. No. 395), filed on March 8, 2013. The Magistrate Judge issued a Report and Recommendation on May 13, 2013 (Dkt. No. 402) recommending denial of the Motion.

BD relies upon cases where damage awards were revisited after the partial reversal of a jury's finding of infringement. *Accentra, Inc. v. Staples, Inc.,* 500 Fed. Appx 922 (Fed. Cir. 2013); *Verizon Services Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295 (Fed. Cir. 2007); *NTP, Inc. v. Research in Motion, Inc.,* 418 F.3d 1282 (Fed. Cir. 2005). However, in each of these cases the Federal Circuit expressly vacated the damage award and remanded the case. BD also contends that *Tronzo v. Biomet, Inc.,* 236 F.3d 1342, 1349 (Fed. Cir. 2001), supports BD's position by noting that "courts have considered revisiting issues otherwise foreclosed in circumstances where there has been a substantial change in the evidence." However, the panel gave no indication in *Tronzo* that its own decision could ever be considered a "change in the evidence," especially since it reversed the district court for revisiting the punitive damage award

A1

(not appealed) after the district court reduced the compensatory damage award (appealed and remanded) from more than $7 million to just $520.

BD fails to address the fact that later Federal Circuit opinions like *Designing Health, Inc. v. Collett,* 226 Fed. Appx 976, 980 (Fed. Cir. 2007) specifically cite *Tronzo* for the proposition that: "An issue within the scope of the initial judgment of a district court is necessarily incorporated within the scope of a court of appeals' mandate, and remanding the case to the district court without instructions to revisit the issue *forecloses further review on remand*." (emphasis added). The argument that such a rule would foreclose relief from the damage award even if the judgment had been reversed entirely (Dkt. No. 402 at 14), ignores the reality that a complete reversal would leave no judgment to collect. Here, the judgment was only reversed in part.

BD concedes that it would require a new trial on damages to grant the relief it requests, as it admits that the record does not currently contain the facts necessary to separate out the damages it contends were due to the 3 mL product found not to infringe. (Dkt. No. 404 at 5 and 15).

BD also argues that the modification of the injunction is inconsistent with the conclusion that the mandate forecloses a new trial on damages. However, the authority of the district courts to modify injunctions does not derive from any appellate mandate. *Amado v. Microsoft Corp.,* 517 F.3d 1353, 1358, 1360 (Fed. Cir. 2008) ("district courts possess broad equitable authority to modify injunctions," and further concluding that the mandate rule did bar retro-active revisiting of the injunctive relief but not prospective modification).

The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation. BD's Rule 60(b)(5) Motion to Conform Judgment to Federal Circuit Mandate (Dkt. No. 395) is **DENIED** for the reasons stated therein.

**So ORDERED and SIGNED this 7th day of August, 2013.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE | § | |
| TECHNLOGIES, INC., et al. | § | |
| | § | |
| v. | § | Case No. 2:07-CV-250-LED-RSP |
| | § | |
| BECTON, DICKINSON AND CO. | § | |

## REPORT AND RECOMMENDATION

Before the Court is "Defendant's Rule 60(B)(5) Motion to Conform Judgment to Federal Circuit Mandate" (Dkt. No. 170), filed on March 8, 2013 by Becton, Dickinson and Company ("BD"). Having considered the parties' arguments and the record evidence, the Court finds that BD's motion should be DENIED.

The procedural history is not contested. The original complaint alleged claims of both patent infringement and antitrust violations. This Court severed those claims for the sake of efficiency. (Dkt. No. 66). The patent claims were tried to a jury, which rendered a verdict of infringement as to both of the accused products, together with a single award of $5,000,000 in royalty damages. The jury also found that the patents were not invalid and the infringement was not willful.

The jury made its finding regarding damages by filling in a single blank in answer to the following interrogatory:

> If you have found that any of BD's accused devices infringe any of the asserted claims of any of the '733 Patent, the '077 Patent, or the '224 Patent, then even if you have answered "yes" to any portion of Interrogatory Nos. 3 through 5 [invalidity and willfulness], please determine the amount of reasonable royalty damages that would fairly and adequately compensate RTI for infringement.

1

**A4**

(Dkt. No. 319 at 6.)  Neither party objected to the verdict form.  (Dkt. No. 333 at 103-104.)  The Court entered a Final Judgment and Permanent Injunction on May 19, 2010 reflecting the jury verdict as modified by the post-trial motion practice.  The judgment enjoined, among other things, the continued sale of the products found to infringe.  (Dkt. No. 366.)

BD filed a Notice of Appeal on June 16, 2010, which lists five specific orders complained of: (1) denial of summary judgment, (2) denial of judgment as a matter of law, (3) granting a permanent injunction, (4) claim construction, and (5) certain evidentiary and discovery rulings.  (Dkt. No. 368.)  Thus, while the injunction was appealed, the damage award was not.  BD's brief in the Federal Circuit lists six issues in the Statement of Issues, none of which mention or relate to the damage award.  (pp. 1-2.)  The only mention of damages in the appellant's brief is in a single sentence of the "Prior Proceedings" section describing the jury verdict.  (p. 29.)   The "Conclusion" of the appellant's brief reads, in its entirety:  "The Court should reverse the judgment or, in the alternative, order a new trial on infringement and/or invalidity."  (p. 68.)  The obvious effect of ordering a new trial only on infringement or invalidity would be to leave the damage award intact if plaintiff again prevailed on infringement and invalidity.  The record certainly indicates that the failure to appeal the damage award was no mere oversight.

Not surprisingly, the Federal Circuit Opinion discusses the issues presented by BD and does not mention the damage award.  The Court affirmed the jury finding of infringement as to one of BD's products, affirmed the finding of no invalidity, and reversed the infringement finding as to the second BD product accused.  The Judgment of the Federal Circuit, issued as mandate, reads: "Reversed in part and affirmed in part."  The damage award was not vacated. There is no remand, nor does the Opinion discuss any further proceedings in this Court.

## APPLICABLE LAW

Rule 60(b) allows a district court "on motion and just terms" to "relieve a party . . . from a final judgment" for certain enumerated reasons. BD's motion is based upon section (b)(5) of Rule 60, which permits relief if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." While this is a patent case, the Federal Circuit has held that a Rule 60(b) motion is purely procedural and not unique to patent law, therefore it is governed by the law of the regional circuit, in this case the Fifth Circuit. *Marquip, Inc. v. Fosber America, Inc.,* 298 F.3d 1363, 1369 (Fed. Cir. 1999).

## DISCUSSION

The effort to fit this issue into Rule 60(b)(5) is made questionable by the language of the rule itself. To say that this judgment is "based on an earlier judgment that has been reversed" is simply not accurate. This *is* the same judgment that was affirmed in part and reversed in part.[1] The real question is what part has been reversed and what part affirmed.

The Federal Circuit has provided guidance on how to interpret its mandates. In *Designing Health, Inc. v. Collett,* 226 Fed.Appx. 976, 980 (Fed. Cir. 2007), the Court held that:

> An issue within the scope of the initial judgment of a district court is necessarily incorporated within the scope of a court of appeals' mandate, and remanding the case to the district court without instructions to revisit the issue forecloses further review on remand.

There can be no doubt that the $5 million damage award in the instant case was "within the scope of the initial judgment" since it was expressly set out therein. The Federal Circuit in

---

[1] While the Fifth Circuit has held that the two judgments can be simultaneous, and one does not have to be "earlier" than the other, it still required that there be two judgments, one of which was based on the other, which was reversed. *Lowery Development, L.L.C. v. Grove & Associates Ins., Inc.,* 690 F.3d 382, 387 (5th Cir. 2012).

*Designing Health* even considered it "notable" that its prior opinion "did not order remand of any issues on appeal; it only 'affirmed-in-part and reversed-in-part' the decision of the district court," just as it did in this case. *Id.* at 980. Thus, *Designing Health* strongly points toward denial of BD's motion.

To the same effect is *Engel Industries, Inc. v. The Lockformer Co.,* 166 F.3d 1379 (Fed. Cir. 1999), wherein the Court held that "an issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Id.* at 1383 (emphasis supplied). In *Engel,* the defendant had succeeded in obtaining a reversal of the trial court's finding of infringement but waited until after the appeal to move for relief in the district court from the trial court's order that it continue to pay royalties. When the trial court ruled that it lacked jurisdiction to do so because of the lack of a remand, the defendant returned to the Federal Circuit. The Federal Circuit noted that its prior opinion (reversing the finding of infringement) had been a "judgment affirming-in-part, reversing-in-part, without remanding" and held that the trial court was correct in determining that the mandate rule foreclosed further review of the defendant's liability for royalties. *Id.* at 1383-84.

Another example is provided in *Tronzo v. Biomet, Inc*., 236 F.3d 1342 (Fed. Cir. 2001), in which the trial court awarded $7,134,000 in compensatory damages and $20,000,000 in punitive damages on both patent infringement and state law claims. The Federal Circuit reversed the patent infringement findings but affirmed the state law liability findings, and vacated the compensatory damage awards and remanded for a new determination of compensatory damages on the state law claims. *Id.* at 1345. On remand the trial court set the compensatory damages at

- 4 -

A7

just $520 and reduced the punitive damages from $20 million to $52,000.  On the second appeal,

the Federal Circuit affirmed the new compensatory damage award but held that the mandate rule

foreclosed review of the punitive damage award, thus leaving it at the original $20 million:

> [W]hile disputing various rulings of the district court on appeal,
> Biomet chose not to contest the amount of punitive damages.
> Because Biomet failed to raise this issue, clearly implicated in the
> initial decision of the district court, our mandate in *Tronzo I* acted
> to prevent Biomet from raising this issue on remand or in any
> future proceedings in this litigation.

*Id.* at 1349.

None of this is new law.  Since the Federal Circuit opinion in this case was issued on July

8, 2011, BD has had ample opportunity to ask that Court for clarification or relief.  Indeed, that

was exactly what was done in the *Designing Health* case, though without success.  BD has

offered no persuasive reason to depart from the rules discussed above.  Determination of the

effect of the reversal of the infringement finding as to the 3 mL Integra (but not the 1 mL

Integra) syringes is not a simple matter of arithmetic as BD argues.  RTI points out numerous

issues that would have been presented to the Federal Circuit on the initial appeal if BD had

decided to appeal the damage award.  Since neither expert suggested the numbers awarded by the

jury, the court would have to weigh the expert testimony and other damage evidence to

redetermine the damages for each accused product.  These are matters that should have been

presented to the Federal Circuit on appeal and not raised for the first time in this court.

The one matter that is properly raised for the first time in this Court is the permanent

injunction.  The law is clear that a district court has continuing jurisdiction to modify the

prospective effect of an injunction if a change in circumstances justifies the modification.

11 *Wright, Miller & Kane*, Federal Practice and Procedure § 2863 (2012).  Furthermore, RTI has

consented to modification of the injunction "to exclude BD's 3mL Integra from the definition of

Infringing Products in the injunction" and has offered a proposed Order to that effect.  (Dkt. No. 391 at 3.)  BD has not objected to the form of the proposed order attached by RTI as Exhibit A to its March 5, 2013 Notice (Dkt. No. 391-1) and entitled "Order Modifying Permanent Injunction."

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that BD's Rule 60(B)(5) Motion to Conform Judgment to Federal Circuit Mandate (Dkt. No. 170) be **DENIED**.  The Court **FURTHER RECOMMENDS** that the Court enter the proposed Order Modifying Permanent Injunction filed as Dkt. No. 391-1 on March 5, 2013.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court.  Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 13th day of May, 2013.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE